IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

PAUL NARANJO,

        Plaintiff,

v.                                            CIV 00-821 JP/KBM

LARRY G. MASSANARI,[1]
Commissioner of Social Security,

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

After a first application for benefits was denied, Plaintiff Paul Naranjo ("Naranjo") filed a second application for benefits alleging an onset date of May 16, 1996 based on the impairments of spinal spondylosis, degenerative disc disease, fibromyalgia, arthritis, and depression. Following a hearing, the Administrative Law Judge ("ALJ") denied benefits on February 18, 1999. The Appeals Council denied review on May 12, 2000.

This action was filed on June 5, 2000,[2] and the matter is now before the Court on Plaintiff's Motion to Reverse and Remand for a Rehearing. *Doc 10.* Having reviewed the entire record and considered the arguments and relevant law, I recommend that Plaintiff's motion be denied, the Commissioner's decision affirmed, and this matter dismissed.

### Analysis

If substantial evidence supports the ALJ's findings and the correct legal standards were applied, the Commissioner's decision stands and Plaintiff is not entitled to relief. *E.g., Hamilton*

---

[1] On March 29, 2001, Larry G. Massanari became the Acting Commissioner of Social Security. In accordance with FED. R. CIV. P. 25(d)(1), Mr. Massanari is substituted for Kenneth S. Apfel as the Defendant in this action.

[2] After filing this suit, Plaintiff filed a new application. *See Doc. 9.*

*v. Sec'y of Health & Human Servs.,* 961 F.2d 1495, 1497-1500 (10th Cir. 1992).  Plaintiff raises two issues – the ALJ failed to apply the treating physician rule and the ALJ erred in finding depression to be nonsevere.

*Treating Physician Rule*

Plaintiff was first diagnosed with fibromyalgia as the possible source of his chronic pain in February 1997.  *See Record* at 469, 531.  Dr. Ben Daitz began treating Plaintiff around May 1997.  He wrote two letters on Plaintiff's behalf, one in October 1997 and the other in November 1998.  In these letters, Dr. Daitz explains that he is of the opinion that the recently-diagnosed fibromyalgia, which cannot be confirmed by "laboratory or imaging tests," resulted in Naranjo not being able to "work or support his family" for a decade.  Dr. Daitz "supports" Plaintiff's application for disability benefits and believes Plaintiff will be unable to hold a job in the future, even with treatment.  *See id.* at 501, 547.  The ALJ considered Dr. Daitz' opinion but did not give it controlling weight because there was substantial evidence to the contrary and the opinion was not supported by objective medical findings.  *Id.* at 372-373.

Plaintiff focuses exclusively on a narrow point.  He argues that the ALJ failed to understand that there are no tests to confirm a diagnosis of fibromyalgia.  Because Dr. Daitz did not state Plaintiff's exact points of tenderness, Naranjo contends that the ALJ had a duty to seek clarification from Dr. Daitz.  Plaintiff's argument ignores the ALJ's finding of substantial evidence contradicting Dr. Daitz' opinion that Naranjo is totally disabled due to fibromyalgia.

I find that the ALJ did not err.  A treating physician's opinion of nature and severity of an impairment, including physical and mental restrictions, is entitled to controlling weight "if it is well supported by clinical and laboratory diagnostic techniques and if it is not inconsistent with other

2

substantial evidence in the record." *Castellano v. Sec'y of Health & Human Servs.,* 26 F.3d 1027, 1029 (10th Cir. 1994) (*citing* 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). However, a treating physician's opinion that a claimant is totally disabled is not dispositive, "because final responsibility for determining the ultimate issue of disability is reserved to the Secretary." *Id.* In evaluating a treating physician's opinion, the ALJ is not required to disregard the other medical evidence – he is required to determine the weight to be afforded Dr. Daitz' opinion. *See Reid v. Chater,* 71 F.3d 372, 374 (10th Cir. 1995).

The ALJ did not discredit Dr. Daitz' fibromyalgia diagnosis. Indeed, he found fibromyalgia among Plaintiff's "severe" impairments. *Record* at 369 (quotation in original). Thus, there was no reason to seek further clarification from Dr. Daitz about the specific trigger points underlying his fibromyalgia diagnosis. Rather, the ALJ's findings concern Dr. Daitz' conclusion that Plaintiff is totally disabled and entitled to benefits because of fibromyalgia-induced pain of ten years' standing. The ALJ gave specific, legitimate reasons that are supported by substantial evidence for disregarding Dr. Daitz' opinion of disability. *See Goatcher v. United States Dep't of Health & Human Servs.,* 52 F.3d 288, 290 (10th Cir. 1995).

Dr. Daitz' opinion is based on the conclusion that Plaintiff has been complaining of chronic pain "all over" for a decade. Having reviewed the entire record, I find this conclusion suspect. The medical records indicate Plaintiff complained of pain in particular spots such as his shoulders, neck, and/or lower back. In addition, Dr. Daitz stated in 1997 that Naranjo had been unable to support his family for over a decade, yet the record reflects that Plaintiff in fact worked in the late 1980's and early 1990's. *See id.* at 64, 74.

In any event, as the ALJ noted, no treating or examining physician, including Dr. Daitz,

placed restrictions on Naranjo.  *Id.* at 373.  Furthermore, as noted by the ALJ, another treating physician stated Plaintiff should be encouraged to work and Plaintiff agreed.  *Id.* at 533, 372. Yet another consultative physician, Dr. Anthony Reeve, stated that Naranjo "is an able bodied individual and should be able to work at a full duty release without restrictions."  *Id.* at 483, 371. Dr. C.H. Uhlenhuth, apparently a treating psychiatrist, noted in September 1998 that upon examination, Plaintiff initially moved stiffly "as in pain" but that this behavior "abated."  *Id.* at 552.

Plaintiff related a "rather pleasant life" to Dr. Uhlenhuth: "working in the garden, visiting friends and relatives, driving his truck, watching TV, active in his church, driving to the far corners of the State in a church van."  *Id.* at 373*, 552*.  Plaintiff also told Dr. Steven Sacks, a consultative psychiatric physician, that he and his wife "try to support themselves with going to flea markets or yard sales . . . they get things to sell from donations from their church."  *Id.* at 373, 487-88.

For these reasons, I find that the ALJ did not fail to apply the treating physician rule.  He applied it and properly weighed Dr. Daitz' opinion in light of other substantial evidence in the record.

### *Nonsevere Depression*

Evidence of a mental impairment that is alleged to prevent a claimant from working requires the ALJ to follow a particular procedure.  That procedure, and more, was followed here. The ALJ not only completed a Psychiatric Review Technique Form ("PRT"), but also had consultative psychiatrist Dr. Sacks examine Plaintiff, and had two reviewing psychiatrists review Plaintiff's psychological records and issue their own PRT reports.  *See Cruse v. United States*

4

*Dept. of Health & Human Servs.,* 49 F.3d 614, 617 (10th Cir. 1995); *see also* 20 C.F.R. §§ 404.1520a, 416.920a (1999).

All three of the PRT reports are in accord: no more than slight limitations in daily living activities and maintaining social functioning, no more than seldom deficiencies in concentration, persistence or pace, and no episodes of deterioration or decompensation in a work or work-like setting. *See Record* at 377, 497, 514. Under the applicable regulations, these findings do not meet the "Part B criteria" for Plaintiff's depression to qualify as a listed severe impairment. *See e.g., Cruse,* 614 F.3d at 617.

The medical records from the University of New Mexico Mental Health Center include Dr. Uhlenhuth's description of Plaintiff's daily activities and assessments of Naranjo's condition as anywhere from "not at all ill" and malingering to "moderately ill." The medical records also indicate Plaintiff's prescriptions for antidepressant medication. *See Record* at 549-67. Dr. Sacks expressly noted Naranjo's daily functioning as "independent of supervision or direction" and further described daily activities as driving to visit relatives, going to flea markets or yard sales, shopping, watering the garden, watching television, attending to his own grooming needs, raising cats, and attending church functions three times a week. *Id.* at 487-88. While Dr. Sacks questioned whether Plaintiff "applied himself fully to the attention/concentration" evaluation, *id.* at 487, he found Plaintiff well groomed, maintained good eye contact, had no bizarre or stereotype movements, sat in the chair for the entire interview, oriented and in contact with reality, able to do basic math and abstractions, and complied with taking his antidepressant medication, *see id.* at 486-487. Dr. Sacks concluded that Naranjo

5

> appears to be able to relate with others.  He is able to understand and follow basic instructions.  I believe he could maintain the attention required to perform simple and repetitive tasks.  He would have some difficulties withstanding the stresses and pressures associated with day-to-day work activity at the present time.  I consider his psychiatric impairment to be moderate. . . .   I consider his depression to be mild at the present time.

*Id.* at 487-488.

Citing the medical records and the consultative examination of Dr. Sacks, the ALJ determined that Plaintiff's depression did not meet the "severe" listing at step 2.  *Id*. at 369-70.  Plaintiff argues that the ALJ "mischaracterized" evidence of Plaintiff's daily activities, activities which he contends do not provide substantial evidence that Naranjo can perform full-time sustained employment.  He maintains that the ALJ should have explained how these activities of daily living prove an ability to work.  *Doc. 11* at 6.

I disagree.  Plaintiff's testimony regarding the type of daily activities in which he engages is consistent with what he reported to Drs. Uhlenhuth and Sacks and provides substantial evidence that Plaintiff is capable of performing light work.  Moreover, Plaintiff does not argue that the evidence establishes the "B" criteria from the PRT reports, which is the relevant inquiry at step 2.  The mere fact that Plaintiff has "some" depression does not automatically entitle him to a finding of disability.  *Bernal v. Bowen,* 851 F.2d 297, 301 (10th Cir. 1988).

Although Naranjo received an "Axis V scale" rating of 70 in June 1996, it was down to 40 by July 1998, and it was only up to 45 by December 1998.  Plaintiff argues that a rating of "50 does not equate with the ability to perform unskilled competitive work [and] the ALJ should have considered these lower ratings."  *Doc. 11* at 7.  However, the

6

> GAF score represents Axis V of the Multiaxial Assessment system. *See* American Psychiatric Assoc., DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS 25- 30, (4th ed.1994). The axial system of evaluation enables the clinician to comprehensively and systematically evaluate a client. *See id.* at 25. The GAF rates the client's "psychological, social, and occupational functioning." *Id.* at 30. ***The GAF is not an absolute determiner of ability to work.***

*Stalvey v. Apfel,* 242 F.3d 390 at *2 (10th Cir. 1999) (emphasis added) (unreported) (attached). Only some of Naranjo's psychological records make a GAF assessment and, as noted above, other such records find him anywhere from not ill and malingering to moderately impaired at the time of the visit. Additionally, severity of depression can be situational and transient. As the Commissioner notes, the July 1998 report coincides with Plaintiff's notice of this Court's prior decision denying his motion to remand and denial of his welfare medical benefits due to noncompliance with treatment. *See Record* at 560; *Naranjo v. Apfel,* CIV No. 97-683 (June 30, 1998 dismissal). While he did not specifically mention the three Axis scores, I find that the ALJ did not err because he considered all of the Plaintiff's records "in reaching his determination that [Plaintiff] could perform light work." *Stalvey* at *2.

Finally, Plaintiff contends that the ALJ failed to discuss the relevance of Dr. Sacks' statement at steps 4 and 5 that Plaintiff "would have some difficulties withstanding the stresses and pressures associated with day-to-day work activity at the present time." *Record* at 488. It is apparent that the ALJ gave consideration to this isolated statement since he specifically mentioned it. Nevertheless, I cannot say that the ALJ's evaluation of Dr. Sack's report "as a whole" was in error. Because the ALJ properly found no significant mental impairment that would limit Naranjo's ability to work, substantial evidence supported the conclusion that Plaintiff can do light

7

work.  *Id.* at 370, 372-373.

Wherefore,

**IT IS HEREBY RECOMMENDED THAT** Plaintiff's motion *(Doc. 10)* be denied, the Commissioner's decision affirmed, and this action dismissed.

> **THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 10 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1).  **A party must file any objections with the Clerk of the District Court within the ten day period  if that party wants to have appellate review of the proposed findings and recommended disposition.  If no objections are filed, no appellate review will be allowed.**

_____
UNITED STATES MAGISTRATE JUDGE

242 F.3d 390 (Table)
**Unpublished Disposition**

**(Cite as: 242 F.3d 390,  2001 WL 50747 (10th Cir.(Okla.)))**

NOTICE:  THIS IS AN UNPUBLISHED OPINION.

(The Court's decision is referenced in a "Table of Decisions Without Reported Opinions" appearing in the Federal Reporter. Use FI CTA10 Rule 36.3 for rules regarding the citation of unpublished opinions.)

United States Court of Appeals, Tenth Circuit.

Iva L. STALVEY, Plaintiff-Appellant,
v.
Kenneth S. APFEL, Commissioner of Social Security Administration, Defendant-Appellee.

**No. 98-5208.**

Aug. 18, 1999.

Before BALDOCK, BARRETT, and McKAY, Circuit JJ.

ORDER AND JUDGMENT  [FN*]

FN* This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir.R. 36.3.

BARRETT.

**\*\*1** After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. *See* Fed.R.App.P. 34(f) and 10th Cir.R. 34.1(G). The case is therefore ordered submitted without oral argument.

Plaintiff Iva L. Stalvey appeals from an order of the district court affirming the Commissioner's determination that she is not entitled to Social Security benefits under either Title II or Title XVI. We affirm.

We review the Commissioner's decision to determine whether his factual findings were supported by substantial evidence in light of the entire record and to determine whether he

242 F.3d 390 (Table)
**Unpublished Disposition**

**(Cite as: 242 F.3d 390, 2001 WL 50747 (10th Cir.(Okla.)))**

applied the correct legal standards. *See* Castellano v. Secretary of Health & Human Servs., 26 F.3d 1027, 1028 (10th Cir.1994). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quotations omitted). In the course of our review, we may "neither reweigh the evidence nor substitute our judgment for that of the agency." Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 800 (10th Cir.1991).

Ms. Stalvey alleged disability as of April 16, 1995, due to diabetes, a foot injury, acute anxiety, and depression. The administrative law judge (ALJ) determined that Ms. Stalvey was not disabled at step five of the five-step sequential process, *see* Williams v. Bowen, 844 F.2d 748, 750-52 (10th Cir.1988), as she could perform light work.

On appeal, Ms. Stalvey contends substantial evidence does not support the ALJ's determination that she can perform light work, the ALJ applied the wrong legal standard in evaluating her mental limitations, and the testimony of the vocational expert (VE) is not substantial evidence as the hypothetical did not reflect her true limitations and was inconsistent with the Dictionary of Occupational Titles (DOT).

Contrary to Ms. Stalvey's contention, substantial evidence does support the ALJ's determination that she can perform light work. The record shows that Ms. Stalvey has had many problems with her diabetes. However, the record does not show any period of the prescribed length, *see,* 20 C.F.R. §§ 404.1509, 416.909, during which Ms. Stalvey was unable to work due to her diabetes. Additionally, the one time when Ms. Stalvey decompensated, possibly due to her diabetes, was prior to the time she claims disability.

The record fails to show that her foot injury is disabling. Ms. Stalvey hurt her foot in karate class in March 1995. The injury has improved since then. She does have mild degenerative changes in her foot with a calcaneal spur, but there is no indication that this is disabling.

Ms. Stalvey argues the ALJ should have ordered a consultative examination. An ALJ has "broad latitude" in determining whether to order a consultative examination. Diaz v. Secretary of Health & Human Servs., 898 F.2d 774, 778 (10th Cir.1990). The ALJ should order one if the claimant has shown "a reasonable possibility that a severe impairment exists" and the examination would be "necessary or helpful to resolve the issue of impairment." Hawkins v. Chater, 113 F.3d 1162, 1167 (10th Cir.1997). No reason for an examination is present here.

**\*\*2** Ms. Stalvey also contends the ALJ applied the wrong legal standard in evaluating her mental limitations. The ALJ must evaluate a mental impairment in accordance with 20 C.F.R. §§ 404.1520a, 416.920a by completing a Psychiatric Review Technique Form (PRT). The ALJ completed the PRT and determined that Ms. Stalvey was depressed and had slight restrictions in her daily activities and in maintaining social functioning, she seldom had deficiencies of concentration and had no episodes of deterioration or decompensation in work or work-like settings. These findings are compatible with the findings of two psychologists

242 F.3d 390 (Table)
**Unpublished Disposition**

**(Cite as: 242 F.3d 390, 2001 WL 50747 (10th Cir.(Okla.)))**

in 1995 and Dr. Inbody's 1995 consultative examination.

Ms. Stalvey contends the ALJ failed to consider Dr. Inbody's determination that she had a Global Assessment of Functioning (GAF) rating of 55. The GAF score represents Axis V of the Multiaxial Assessment system. *See* American Psychiatric Assoc., Diagnostic and Statistical Manual of Mental Disorders 25- 30, (4th ed.1994). The axial system of evaluation enables the clinician to comprehensively and systematically evaluate a client. *See id.* at 25. The GAF rates the client's "psychological, social, and occupational functioning." *Id.* at 30. The GAF is not an absolute determiner of ability to work. The ALJ properly considered that score along with the rest of the medical evidence in reaching his determination that Ms. Stalvey could perform light work.

Ms. Stalvey contends the testimony of the VE is not substantial evidence as the hypothetical posed to her did not reflect her true limitations. The hypothetical reflected the limitations the ALJ accepted. *See* Evans v. Chater, 55 F.3d 530, 532 (10th Cir.1995) (ALJ's hypothetical questions to vocational expert "must include all (and only) those impairments borne out by the evidentiary record").

Ms. Stalvey argues that the exertional levels identified by the VE for the jobs she concluded Ms. Stalvey could perform do not agree with those assigned by the DOT. Although there may be some unexplained differences for some of the jobs the VE identified, the exertional level assigned by both the VE and the DOT to the position of food and beverage cashier is light, the level accepted by the ALJ as one Ms. Stalvey can perform. The VE testified that 1,813 such jobs are available in Oklahoma, with 139,008 available nationally. The ALJ properly determined that a sufficient number of those jobs existed in the local and national economy. *See, e.g.,* Trimiar v. Sullivan, 966 F.2d 1326, 1330- 32 (10th Cir.1992). We find no error in the ALJ's determination that Ms. Stalvey could perform work which is available in both Oklahoma and the national economy in substantial numbers.

The judgment of the United States District Court for the Northern District of Oklahoma is AFFIRMED.

END OF DOCUMENT